**EXHIBIT 1 TO AFFIRMATION**

TRADEMARKS AND LETTERS PATENT ASSIGNMENT

This Assignment of Trademarks and Letters Patent ("Assignment") made this ⌐½⌐day of January, 1988 between SAVIN CORPORATION, a Delaware corporation with its principal place of business at 9 West Broad Street, Stamford, Connecticut 06904 ("Assignor") and FOOTHILL CAPITAL CORPORATION, a California corporation with an office at Suite 1500, 11111 Santa Monica Boulevard, Los Angeles, California ("Assignee").

WHEREAS, Assignor and Assignee have entered into certain loan and security agreements whereby Assignee has loaned and has agreed to lend funds to Assignor on the terms and conditions set forth in said agreements (the General Loan and Security Agreement of even date herewith and other financing documents are hereinafter collectively referred to as the "Agreements"); and

WHEREAS, Assignor is the record owner of: (i) the trademarks, letters patent, and patent applications of the United States listed on Schedule A annexed hereto ("Trademarks and Letters Patent"), which Trademarks and Letters Patents are registered in, which patents are issued by, and which patent applications are pending in the United States Patent and Trademark Office; and (ii) the inventions described and claimed in the Letters Patent; and

WHEREAS, Assignor wishes hereby to assign to Assignee the Trademarks and Letters Patent on the terms set forth herein, along with the goodwill of the business connected with the Trademarks.

NOW, THEREFORE, for and in consideration of the terms and conditions set forth in the Agreements and set forth herein, the parties agree as follows:

1.  To secure the complete and timely satisfaction of all of Assignor's Obligations (as defined in the General Loan and Security Agreement between Assignor and Assignee of even date herewith) to Assignee, Assignor hereby grants, assigns and conveys to Assignee the Letters Patent listed on Schedule A hereto, including without limitation, all proceeds thereof (subject to licensee's rights under now existing license and related agreements and such future license and related agreements as may be permitted hereby) (such as, by way of example, license royalties and proceeds of infringement suits), the right to sue for past, present and future infringements, all rights corresponding thereto throughout the world and all re-issues, divisions, continuations, renewals, extensions and continuations-in-part thereof.

2.  Assignor hereby assigns and conveys and transfers unto Assignee, its successors, assigns and legal representatives, upon

- 1 -

CONFIDENTIA

the terms and conditions contained in the Agreements, and as security for payment and performance of the Obligations of Assignor to Assignee, all of Assignor's right, title and interest in, to and under the Trademarks, together with the goodwill of the business symbolized by the Trademarks, and the registration thereof as indicated on Schedule A together with the Letters Patent; provided, however, that until the occurrence or existence of an Event of Default, as defined in the Agreements, Assignor shall be licensed by Assignee to continue to use the Trademarks and Letters Patent in its business as if it had not made this Assignment.

3.    Assignor covenants and warrants that, in connection with the Letters Patent:

a.    The Letters Patent are subsisting and have not been adjudged invalid or unenforceable, in whole or in part;

b.    To the best of Assignor's knowledge, each of the Letters Patent is valid and enforceable;

c.    To the best of Assignor's knowledge, Assignor is the sole and exclusive owner of the entire and unencumbered right, title and interest in and to each of the Letters Patent, free and clear of any liens, charges and encumbrances, including, without limitation, licenses (except existing license agreements entered into by Assignor in the ordinary course of its business), shop rights and covenants by Assignor not to sue third persons; and

d.    Assignor has the unqualified right to enter into this agreement and perform its terms.

4.    Assignor agrees that, until all of the Obligations shall have been satisfied in full, it will not enter into any agreement (for example, a (sub)license agreement) which is inconsistent with Assignor's obligations under this agreement, without Lender's prior written consent; provided, however, that Assignee expressly consents to any (sub)license agreement pertaining to a Trademark or Letter Patent heretofore or hereafter entered into by Assignor in the ordinary course of its business, provided that Assignor shall have no right hereunder to enter into any (sub)license agreement after the occurrence of an Event of Default and for so long as it is continuing (or the occurrence of any event, which, with the passage of time, will become an Event of Default) under the Agreements. Assignor agrees that, after an Event of Default, and at any other time reasonably requested by Assignee, Assignor will furnish Assignee with schedules listing all (sub)license agreements pertaining to all Trademarks and Letters Patent, together with copies of all such (sub)license agreements. 

- 2 -

CONFIDENTIAL

5. If, before the Obligations shall have been satisfied in full, Assignor shall obtain rights to any new trademarks or patentable inventions, or become entitled to the benefit of any patent application or patent for any reissue, division, continuation, renewal, extension, or continuation-in-part of any Patent or any improvement on any Patent, the provisions of paragraphs 1 and 2 shall automatically apply thereto and Assignor shall give to Assignee prompt notice thereof in writing hereof.

6. Assignor authorizes Assignee to modify this agreement by amending Schedule A to include any future patents and patent applications which are Letters Patent under paragraph 2 or paragraph 5 hereof or to include any future trademarks which are Trademarks under paragraph 2 or 5 hereof.

7. Unless and until there shall have occurred and be continuing an Event of Default (as defined in the Agreements) in Assignor's Obligations to Assignee, Assignee hereby grants to Assignor (subject to the terms and conditions of now existing license and related agreements) the exclusive, royalty-free, nontransferrable right and license to make, have made, use and sell goods marked or identified by the Trademarks and the goods and processes covered by the inventions disclosed and claimed in the Letters Patent for Assignor's own benefit and account for none other. Assignor agrees not to sell or assign its interest in, or grant any sublicense under, the license granted to Assignor in this paragraph 7, without the prior written consent of Assignee, or except as permitted by paragraph 4 hereof in the ordinary course of Assignor's business. The parties agree that all use of the Trademarks by Assignor shall inure to the benefit of Assignee. Assignor agrees that for so long as this license shall remain in effect, Assignor shall at all times maintain the quality of all goods marked or identified by the Trademarks. In furtherance of the license granted by Assignee to Assignor pursuant to this paragraph, but solely in connection with the monitoring of the financing arrangements created by the Agreements, Assignee shall have the right, no more than semi-annually, upon prior oral or written notice to Assignor, to examine, at Assignor's expense, Assignor's quality standards with respect to the manufacture, use and sale of goods marked or identified by the Trademarks; provided, however, that Assignor agrees that it shall be Assignor's responsibility, and in no way Assignee's, to maintain such quality standards at all times.

8. If an Event of Default shall have occurred and be continuing, Assignor's license as set forth in paragraphs 4 and 7, shall terminate forthwith, and Assignee shall have, in addition to all other rights and remedies given it by this agreement, those allowed by law and the rights and remedies given it by this agreement, those allowed by law and the rights and remedies of a secured party under the Uniform Commercial Code as enacted in any

- 3 -

CONFIDENTIAL

jurisdiction in which the Trademarks and Letters Patent may be located and, without limiting the generality of the foregoing, Assignee may immediately, without demand of performance and without other notice (except as set forth next below) or demand whatsoever to Assignor, all of which are hereby expressly waived, and without advertisement, sell at public or private sale or otherwise realize upon, in Connecticut or elsewhere, the whole or from time to time any part of the Trademarks and Letters Patent, or any interest which Assignor may have therein, and after deducting from the proceeds of sale or other disposition of the Trademarks and Letters Patent all expenses (including all reasonable expenses for brokers' fees and legal services), shall apply the residue of such proceeds toward the payment of the Obligations. Without limiting the generality of the foregoing, Assignee shall also have the right, after default by Assignor, to notify all licensees of any or all of the Trademarks and Letters Patent of the assignment of said Trademarks and Letters Patent provided for herein and Assignee shall be entitled to collect all amounts then and thereafter due to Assignor under all such license agreements and to apply such funds toward the payment of the Obligations. Any remainder of the proceeds after payment in full of the Obligations shall be paid over to the Assignor. Notice of any sale or other disposition of the Trademarks and Letters Patent shall be given to Assignor at least five (5) days before the time of any intended public or private sale or other disposition of the Trademarks and Letters Patent is to be made, which Assignor hereby agrees shall be reasonable notice of such sale or other disposition. At any such sale or other disposition, any holder of any note or Assignee may, to the extent permissible under applicable law, purchase the whole or any part of the Trademarks and Letters Patents sold, free from any right of redemption on the part of Assignor, which right is hereby waived and released.

9.    Assignor assumes all responsibility arising from the use of the Trademarks and Letters Patent and Assignor hereby indemnifies and holds Assignee harmless from and against any claim, suit, loss, damage or expense (including reasonable attorneys' fees) arising out of any alleged defect in any product manufactured, promoted or sold by Assignor bearing or in connection with any trademark or patent or out of the manufacture, promotion, labelling, sale or advertisement of any such product by Assignor.

10.    Any and all fees, costs and expenses of whatever kind or nature, including the reasonable attorneys' fees and legal expenses, incurred by Assignee in connection with the preparation of this agreement and all other documents relating hereto and the consummation of this transaction, the filing or recording of any documents (including all taxes in connection therewith) in public offices, the payment or discharge of any taxes, counsel fees, maintenance fees, encumbrances or otherwise protecting, maintaining, preserving the Trademarks and Letters Patent, or in the conduct of

- 4 -

CONFIDENTIAL

periodic quality control examinations as permitted hereby, or in defending or prosecuting any actions or proceedings arising out of or related to the Trademarks and Letters Patent, shall be borne and paid by Assignor on demand by Assignee and until so paid shall be added to the principal amount of the obligations and shall bear interest at the rate prescribed in the Agreements.

11. Assignor shall have the duty, through counsel reasonably acceptable to Assignee, to prosecute diligently any patent application of the Letters Patent pending as of the date of this agreement (to the extent that Assignor in the exercise of its business judgment believes such prosecute to be reasonable) or thereafter until the obligations shall have been paid in full, and to preserve and maintain all rights in patent applications and patents of the Letters Patent. Any expenses incurred in connection with such an application shall be borne by Assignor. Assignor shall not abandon any right to file a patent application, or any pending patent application or patent without the consent of Assignee, which consent shall not be unreasonably withheld.

12. Upon the failure or inability of Assignor, after request by Assignee, to take actions required under paragraph "11", Assignee shall have the right but shall in no way be obligated to bring suit in its own name to enforce either the Trademarks or Letters Patent and any license thereunder, in which event Assignor shall at the request of Assignee do any and all lawful acts and execute any and all proper documents required by Assignee in aid of such enforcement and Assignor shall promptly, upon demand, reimburse and indemnify Assignee for all costs and expenses incurred by Assignee in the exercise of its rights under this paragraph 12.

13. Concurrently with the execution and delivery hereof, Assignor is executing and delivering to Assignee, in the form of Schedule B hereto, one original of a Power of Attorney for the implementation of the assignment, sale or other disposal of the Trademarks and Letters Patent pursuant to this Trademark and Patent Collateral Assignment and Assignor hereby releases Assignee from any claims, causes of action and demands at any time arising out of or with respect to any actions taken or omitted to be taken by Assignee, under the powers of attorney granted herein other than actions taken or omitted to be taken through the gross negligence or willful misconduct of any officer, director or employee of Assignee, and Assignor agrees to hold Assignee harmless from and with respect to any and all such claims, causes of action and demands.

14. No course of dealing between Assignor and Assignee, nor any failure to exercise, nor any delay in exercising, on the part of Assignee, any right, power or privilege hereunder or under the Agreements shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder or

- 5 -

CONFIDENTIAL

thereunder preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

15. All of Assignee's rights and remedies with respect to the Trademarks and Letters Patent, whether established hereby or by the Agreements, or by any other agreements or by law shall be cumulative and may be exercised singularly or concurrently.

16. The provisions of this agreement are severable, and if any clause or provision shall be held invalid and unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this agreement in any jurisdiction.

17. This agreement is subject to modification only by a writing signed by the parties, except as provided in paragraph 6.

18. The benefits and burdens of this agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the parties.

19. The validity and interpretation of this agreement and the rights and obligations of the parties shall be governed by the laws of the State of Connecticut.

20. This Assignment shall remain effective for so long as any Obligations of Assignor to Assignee under the Agreements remain outstanding. At such time as Assignee becomes obligated to terminate its security interests pursuant to paragraph 4.2 of the General Loan and Security Agreement of even date herewith, Assignee shall reassign the Trademarks, Letters Patent and goodwill to Assignor.

WITNESS the execution hereof under seal as of the day and year first above written.

WITNESSES:                                          SAVIN CORPORATION

_____                    By _____
_____                          Robert B. Whittredge II
                                                                Its Treasurer

- 6 -

CONFIDENTIA

*Pamela S. Ferro*

*[signature]*

FOOTHILL CAPITAL CORPORATION

By _____  S.V.P.

Dennis Robinson

Its Senior Vice President

STATE OF Connecticut    )
                        ) ss.
COUNTY OF Fairfield     )

The foregoing instrument was acknowledged before me this 13th day of January, 1988, by Robert Whittaker, the Treasurer of Savin Corporation, on behalf of the corporation.

_____
Commissioner of the Superior Court

STATE OF Connecticut    )
                        ) ss.
COUNTY OF Fairfield     )

The foregoing instrument was acknowledged before me this 13th day of January, 1988, by Dennis Robinson, the Senior Vice President of Foothill Capital Corporation, on behalf of the corporation.

_____
Commissioner of the Superior Court

- 7 -

CONFIDENTIAL

## SPECIAL POWER OF ATTORNEY

STATE OF CONNECTICUT)
                     ) ss.
COUNTY OF FAIRFIELD )

KNOW ALL MEN BY THESE PRESENTS, THAT SAVIN CORPORATION, a Delaware corporation with its principal place of business at 9 West Broad Street, Stamford, Connecticut 06904 ("Savin") hereby appoints and constitutes FOOTHILL CAPITAL CORPORATION, a California corporation with an office at Suite 1500, 11111 Santa Monica Boulevard, Los Angeles, California ("Foothill"), its true and lawful attorney, with full power of substitution, and with full power and authority to perform the following acts on behalf of Savin:

1. For the purpose of assigning, selling or otherwise disposing of all right, title and interest of Savin in and to any trademarks and letters patents of the United States, or any other country or political subdivision thereof, and all registrations, recordings, re-issues, continuations, continuations-in-part and extensions thereof, and all pending applications therefor, and for the purpose of the recording, registering and filing of, or accomplishing any other formality with respect to the foregoing, to execute and deliver any and all agreements, documents, instruments of assignment or other papers necessary or advisable to effect such purpose;

2. To execute any and all documents, statements, certificates or other papers necessary or advisable in order to obtain the purposes described above as Foothill may in its sole discretion determine.

This power of attorney is made pursuant to a Trademark and Letters Patent Collateral Assignment, dated of even date herewith, between Savin and Foothill and takes effect solely for the purposes of said Trademark and Letters Patent Collateral Assignment and is subject to the conditions thereof and may not be revoked until the payment in full of all "Obligations" as defined in such Trademarks and Letters Patent Collateral Assignment.

Dated at Stamford, Connecticut, this 13th day of January, 1988.

WITNESS:

                                        SAVIN CORPORATION

_____        BY _____
                                           Robert E Whittredge II
                                           Its Treasurer

- 1 -

CONFIDENTIAL

STATE OF Connecticut     )
                         ) ss.
COUNTY OF Fairfield      )

    The foregoing instrument was acknowledged before me this 15th
day of Jenuary , 1988, by Robert B. Whittredge II ,
the Treasurer of Savin Corporation, on behalf of the
corporation.

Commissioner of the Superior
Court

- 2 -

CONFIDENTIAL

SCHEDULE B

SPECIAL POWER OF ATTORNEY

STATE OF CONNECTICUT)
                    ) ss.
COUNTY OF FAIRFIELD )

    KNOW ALL MEN BY THESE PRESENTS, THAT SAVIN CORPORATION, a Delaware corporation with its principal place of business at 9 West Broad Street, Stamford, Connecticut 06904 ("Savin") hereby appoints and constitutes FOOTHILL CAPITAL CORPORATION, a California corporation with an office at Suite 1500, 11111 Santa Monica Boulevard, Los Angeles, California ("Foothill"), its true and lawful attorney, with full power of substitution, and with full power and authority to perform the following acts on behalf of Savin:

    1.  For the purpose of assigning, selling or otherwise disposing of all right, title and interest of Savin in and to any trademarks and letters patents of the United States, or any other country or political subdivision thereof, and all registrations, recordings, re-issues, continuations, continuations-in-part and extensions thereof, and all pending applications therefor, and for the purpose of the recording, registering and filing of, or accomplishing any other formality with respect to the foregoing, to execute and deliver any and all agreements, documents, instruments of assignment or other papers necessary or advisable to effect such purpose;

    2.  To execute any and all documents, statements, certificates or other papers necessary or advisable in order to obtain the purposes described above as Foothill may in its sole discretion determine.

    This power of attorney is made pursuant to a Trademark and Letters Patent Collateral Assignment, of even date herewith, between Savin and Foothill and takes effect solely for the purposes of said Trademark and Letters Patent Collateral Assignment and is subject to the conditions thereof and may not be revoked until the payment in full of all "Obligations" as defined in such Trademarks and Letters Patent Collateral Assignment.

    Dated at Stamford, Connecticut this |3th day of January, 1988.

WITNESS:

                                              SAVIN CORPORATION

                                          By _____
                                              Robert E. Whittredge II
                                            Its Treasurer

- 3 -

CONFIDENTIAL

STATE OF Connecticut )
                       ) ss.
COUNTY OF Fairfield   )

    The foregoing instrument was acknowledged before me this 13th
day of January , 198 8 , by Robert R. Whittmore II ,
the treasurer of Savin Corporation, on behalf of the
corporation.

Commissioner of the Superior
Court

- 4 -

CONFIDENTIAL

AMENDED SCHEDULE "A"

SAVIN TRADEMARKS

| CASE | TRADEMARK | REGISTRATION /APPLICATION | ISSUED/FILED | DECLARATION /EXPIRATION |
|---|---|---|---|---|
| 7 | ELECTROMIX | R - 779,291 | I - 11/3/64 | X - 11/3/04 |
| 10 | SAVIN | R - 836,540 | I - 10/10/67 | X - 10/10/07 |
| 34 | SAVIN (logo) | R - 913,252 | I - 6/8/71 | X - 6/8/01 |
| 35 | SAVIN (new logo) | R - 939,352 | I - 8/1/72 | X - 8/1/02 |
| 66 | WORD MASTER | R - 975,892 | I - 1/1/74 | X - 1/1/04 |
| 72 | SAVIN (for WORD MASTER) | R - 1,014,386 | I - 6/24/75 | X - 6/24/95 |
| 95 | 770 COPIER | R - 1,075,867 | I - 10/25/77 | X - 10/25/97 |
| 103 | 780 COPIER | R - 1,080,273 | I - 12/27/77 | X - 12/27/97 |
| 134 | 760 COPIER | R - 1,102,034 | I - 9/12/78 | X - 9/12/98 |
| 147 | 755 COPIER | R - 1,115,204 | I - 3/20/79 | X - 3/20/99 |
| 159 | 790 COPIER | R - 1,143,198 | I - 12/16/80 | X - 12/16/00 |
| 183 | SAVIN (new logo) | R - 1,174,900 | I - 10/27/81 | X - 10/27/01 |
| 191 | 772 | R - 1,142,368 | I - 12/9/80 | X - 12/9/00 |
| 195 | 870 | R - 1,158,954 | I - 6/30/81 | X - 6/30/01 |
| 196 | 880 | R - 1,159,824 | I - 7/7/81 | X - 7/7/01 |
| 200 | 775 | R - 1,162,598 | I - 7/28/81 | X - 7/28/01 |
| 230 | 765 | R - 1,186,551 | I - 1/19/82 | X - 1/19/02 |
| 239 | 800 | R - 1,208,021 | I - 9/14/82 | X - 9/14/02 |
| 242 | 895 | R - 1,208,040 | I - 9/14/82 | X - 9/14/02 |
| 253 | LANDA PROCESS | R - 1,246,286 | I - 7/26/83 | X - 7/26/03 |
| 329 | SYSTEM 850 | R - 1,258,439 | I - 11/22/83 | X - 11/22/03 |
| 342 | 5020 | R - 1,321,916 | I - 2/26/85 | X - 2/26/05 |
| 343 | 5030 | R - 1,321,915 | I - 2/26/85 | X - 2/26/05 |

NY2-39921.1
06/29/95  12:55pm

-1-

CONFIDENTIAL

| CASE | TRADEMARK | REGISTRATION /APPLICATION | ISSUED/FILED | DECLARATION /EXPIRATION |
|---|---|---|---|---|
| 344 | 5040 | R - 1,321,914 | I - 2/26/85 | X - 2/26/05 |
| 385 | ELECTROINK | R - 1,316,402 | I - 1/29/85 | X - 1/29/05 |
| 411 | 7020 | R - 1,399,281 | I - 7/1/86 | X - 7/1/06 |
| 412 | 7025 | R - 1,404,762 | I - 8/12/86 | X - 8/12/06 |
| 413 | 7035AD | R - 1,403,886 | I - 8/5/86 | X - 8/5/06 |
| 414 | 7040 | R - 1,399,280 | I - 7/1/86 | X - 7/1/06 |
| 415 | 7030 | R - 1,404,772 | I - 8/12/86 | X - 8/12/06 |
| 616 | ELECTRONIC EASEL | A - 577,036 | F - 1/10/86 | |
| 418 | 7015 | R - 1,405,636 | I - 8/19/86 | X - 8/19/06 |
| 420 | 7055 | R - 1,405,640 | I - 8/19/86 | X - 8/19/06 |
| 423 | V-35 | R - 1,419,883 | I - 12/9/86 | X - 12/9/06 |
| 424 | SAVIN (service mark) | R - 1,500,782 | I - 08/06/88 | X - 08/16/08 |
| 425 | 7010 | R - 1,478,433 | I - 03/01/88 | X - 03/01/08 |
| 426 | 7065 | R - 1,479,431 | F - 03/08/88 | X - 03/08/08 |
| | SAVINFAX | R - 1,514,474 | I - 11/29/88 | X - 11/29/08 |

CONFIDENTIAL