# Cantor Colburn LLP

*Intellectual Property Attorneys*



e-mail: iplaw@cantorcolburn.com
web: www.cantorcolburn.com

**HARTFORD**
55 Griffin Road South
Bloomfield, CT 06002
phone: 860-286-2929
fax: 860-286-0115

Michael A. Cantor
Philmore H. Colburn II
Keith J. Murphy
Sarah M. Reimer, Ph.D.
David A. Fox
William J. Cass
Michael J. Rye
Pamela L. Curbelo
Kenneth P. VanWyck*
Victor E. Libert

Andrew C. Ryan
H. M. Bedingfield
Steven M. Coyle
Charles F. O'Brien
George A. Pelletier, Jr.
Troy J. LaMontagne
Daniel F. Drexler
James J. Merrick
Sean F. Sullivan
Pamela S. Chestek
Daniel E. Bruso
Lisa A. Bongiovi
Peter R. Hagerty*
Anne Davis Barry
Marisa J. Dubuc
Jae Y. Park*
David Arnold
Roberta L. Pelletier
Michael A. Blake*
Joel T. Charlton
Frederick A. Spaeth

*of counsel:*
David S. Fishman
Jay L. Chaskin*
Bernard Snyder*

*not admitted in CT*

Korean Patent Attorney
Suk-Heum Kwon
Soonja Bae

*patent agent:*
J. Michael Buchanan, Ph.D.
Karen A. Jalbert
Patricia S. DeSimone
David E. Rodrigues, Ph.D.
Karen A. LeCuyer, Ph.D.
L. Anne Horvath, Ph.D.

**DETROIT**
201 W. Big Beaver Rd., Suite 370
Troy, Michigan 48084
phone: 248-524-2300
fax: 248-524-2700

Robert S. Nolan
Christopher C. Boehm
Suzanne D. Nolan, Ph.D.
Cathy B. Roumell
Mary E. Golota
John F. Buckert

March 3, 2004

e-mail: pchestek@cantorcolburn.com

**VIA HAND DELIVERY**
The Honorable Alfred V. Covello
United States District Judge
United States District Court for the District of Connecticut
450 Main Street
Hartford, CT 06103

Re:   *Savin Corp. v. The Savin Center, P.C.*
3:02CV2297 (AVC)

Dear Judge Covello:

This firm represents the Defendant, The Savin Center, P.C., in the above-referenced matter. This letter is in response to a letter dated March 1, 2004 sent to you by counsel for the plaintiff, Savin Corp., asking that the Court issue a protective order preventing the deposition of Mr. David A. Einhorn.

On February 18, 2004, the Court allowed amendment of the Defendant's Answer to add a counterclaim petitioning to cancel four trademark registrations owned by the Plaintiff. There are two different bases for cancellation of the registrations: first, the abandonment of three trademark registrations by, *inter alia*, an improper assignment in gross from Savin Corp. to Foothill Capital Corp.; and, second, the invalidation of one trademark registration for fraud on the Trademark Office.

The same day that Defendant's counsel learned that the Answer had been amended, February 20, the undersigned advised Mr. Andriola in a telephone call that the Defendant would be taking the deposition of Mr. Einhorn. The Defendant's reason for deposing Mr. Einhorn was not harassment, but simply because Mr. Einhorn happened to be the prosecuting attorney for various trademark registrations relevant to the counterclaim. Attorneys involved in the prosecution of patent and trademark applications are routinely deposed in these kinds of cases.

*[stamp along left margin: March 5, 2004. The clerk of the court is ordered to docket this letter as a memorandum in opposition to the plaintiff's March 1, 2004 motion for a protective order. SO ORDERED. Alfred V. Covello, U.S.D.J.]*

**Cantor Colburn** LLP
*Intellectual Property Attorneys*

The Honorable Alfred V. Covello<br>
March 3, 2004<br>
Page 2 of 5

Information solely within Mr. Einhorn's knowledge is therefore relevant to two issues. First, on the issue of abandonment, there are documents submitted by Mr. Einhorn to the Patent and Trademark Office in various trademark applications and registrations during the time period that Foothill Capital Corp. was the putative owner of the SAVIN marks. At his deposition, however, Michael Fishman, the person who signed documents on behalf of Foothill Capital Corp., had no recollection of having seen the documents before or of any relationship between Foothill Capital Corp. and Anderson, Kill & Olick. Thus, the only other person who it appears would have personal knowledge on these matters is Mr. Einhorn. Note also that Foothill Capital Corp. was the record owner of the trademark registrations from January 13, 1988 to December 18, 1995, a period that ended many years before this case was filed. There is therefore little likelihood that investigation of events occurring during this time period would implicate any attorney-client privilege as it relates to the current litigation.

Second is the issue of fraud. For a claim of fraud in procuring a trademark registration, the Defendant must prove that Savin Corp. knowingly made false, material representations of fact in connection with its application. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46 (Fed. Cir. 1986). As noted by Savin Corp. in its March 1, 2004 letter, the claim is based on an allegation that Mr. Einhorn, acting as the agent of Savin Corp., made false representations to the examining attorney on or about December 8, 1998 intending that the Patent and Trademark Office would rely on those statements in allowing the application for registration. Thus, it is necessary to prove that Savin Corp. or its agent Mr. Einhorn had knowledge of the falsity and intended that the agency would rely on the false information in allowing the application. The Savin Corp. 30(b)(6) witness, Peter Heinsohn, stated that he was the only contact for trademark matters at Savin Corp. and had no knowledge of this trademark application as a general matter or of the particular examiner's amendment at issue. Thus, Mr. Einhorn is the only person who might have personal knowledge about the issues of knowing falsity and intent necessary for proof of the Defendant's counterclaim. The examining attorney, of course, could have no information relevant to Savin Corp.'s knowledge or intent.

With these facts in mind, it is apparent that Mr. Einhorn may be deposed.

> Rule 26 require[s] a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to

**Cantor Colburn** LLP
*Intellectual Property Attorneys*

The Honorable Alfred V. Covello<br>
March 3, 2004<br>
Page 3 of 5

> determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2003).

In this case, as explained above, Mr. Einhorn has highly relevant information not available from any other source. *See, e.g., Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp.2d 340, 343 (S.D.N.Y. 2002) ("White was the lead counsel for the prosecution of the '353 patent. His name is the only one that appears on the face of the patent as an attorney. Thus, White is likely the only source for much of the information that Alcon seeks and the best source for the rest of the requested information because of his role in the prosecution of the patent."). In some cases the Defendant has already deposed other witnesses and learned they have no personal knowledge, leaving Mr. Einhorn as the only possible source for the information.

In fact, Savin Corp.'s March 1 letter motion points out the very necessity of the deposition. Savin Corp. states that the letter written by Mr. Einhorn to the examining attorney in 1998 only "summariz[es]" the telephone call. Further, on or about February 19, less than two weeks ago, Mr. Einhorn submitted an "affirmation" to the court, relating his version of what happened in the telephone call. *See* Exh. A (Docket No. 42). Savin Corp. would undoubtedly prefer that the letter and Affirmation stand unexamined, but the discovery process allows the Defendant to obtain all facts relevant to its counterclaim, not just those Mr. Einhorn chooses to present in support of his client's cause.

In its letter, Savin Corp. makes non-specific claims of work product and attorney-client privilege. First, there could be no work product privilege involved since prosecution of trademark applications is not in anticipation of litigation, unless the "primary motivating purpose of the registration was to assist in the pending or impending litigation." *Amicus Communicaitons, L.P. v. Hewlett-Packard Co.*, 1999 WL 33117227, at *2 (D.D.C. 1999). There is nothing here to indicate that the trademark registrations at issue were anything more than routine registration of trademark rights with an administrative agency that occurred long ago.

**Cantor Colburn** LLP
*Intellectual Property Attorneys*

The Honorable Alfred V. Covello
March 3, 2004
Page 4 of 5

Second, it is not possible to know at this point in time whether the deposition will involve work product or attorney-client privilege at all. For example, the telephone conversation between Mr. Einhorn and the examining attorney is simply not privileged. The opportunity for taking the deposition of an attorney cannot be denied merely because there might be privilege concerns. *See, e.g., Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp.2d 340, 344 (S.D.N.Y. 2002) ("[A]t a minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested and any claimed privilege placed on the record."); *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990) ("The court will ordinarily decline a motion for protective order or to quash a subpoena .... Instead the court requires the deponent to appear for the deposition and there raise any such objections. Counsel then has an opportunity to explore background facts concerning the privilege, and the deponent can substantiate any objections."). Third, any privilege may have already been waived; for example, the privilege has been waived for any documents submitted to the Patent and Trademark Office. *See Westvaco Corp. v. Int'l Paper Co.*, 23 U.S.P.Q.2d (BNA) 1401, 1406, 1991 WL 398677 (E.D. Va. 1991) ("[A]ny voluntary disclosure by the client to the adversary or a third party waives the privilege as to the specific communication and others relating to the same subject matter. This includes selective disclosure for tactical purposes."). Fourth, there is no attorney-client privilege for fraud. *In re Spaulding Sports Worldwide Inc.*, 203 F.3d 803, 807 (Fed. Cir. 2000).

Courts routinely have allowed the depositions of patent prosecution counsel. *See, e.g., Alcon Labs*, 225 F. Supp.2d at 45 (S.D.N.Y. 2002); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995); *Hay & Forage Indus.*, 132 F.R.D. at 689-90. Indeed, "[w]hen a party employs a counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *United Phosphorus*, 164 F.R.D. at 249. "[A] patent prosecution attorney cannot avoid being deposed simply because he is later selected to act as trial counsel in an infringement action concerning the very patent he helped to prosecute." *Alcon Labs*, 225 F. Supp.2d at 344.

**Cantor Colburn** LLP
*Intellectual Property Attorneys*

The Honorable Alfred V. Covello
March 3, 2004
Page 5 of 5

The Defendant therefore respectfully requests that the Court deny the motion for a protective order and allow the deposition of Mr. Einhorn, currently scheduled for March 9, 2003, to go forward. The Defendant also respectfully asks that this Court make itself available during the scheduled time for the deposition so that it can resolve any privilege issues that arise during the deposition. The Defendant would be happy to reschedule the deposition for the Court's convenience.

Respectfully submitted,

*[signature]*

Pamela S. Chestek

cc:    James M. Andriola (via telefax)

# EXHIBIT A

Case 3:02-cv-02297-AVC    Document 45    Filed 03/05/2004    Page 6 of 9

David A. Einhorn (CT 09458)
James M. Andriola (CT 22742)
Anderson Kill & Olick, P.C.
Two Sound View Drive
Greenwich, Connecticut 06830
(203) 622-7688
- and -
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10022
(212) 278-1000

Attorneys for Plaintiff Savin Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAVIN CORPORATION,<br><br>       Plaintiff,<br><br>- v -<br><br>THE SAVIN CENTER, P.C.<br><br>       Defendant. | Case No. 302 CV 2297 (AVC) |

AFFIRMATION OF DAVID A. EINHORN, ESQ. IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND
THE ANSWER TO ADD A COUNTERCLAIM

I DAVID A. EINHORN, ESQ. hereby affirm the following:

1.  I am a member of the law firm of Anderson Kill & Olick, P.C., serving as counsel to Savin Corporation ("Savin") in this matter and as such am fully familiar with the facts of this case. I submit this affirmation in support of Savin's Opposition to The Savin Center's ("TSC") Motion for Leave to Amend the Answer to Add a Counterclaim. ("Motion").

:717388-1

2. At the time that the trademark SAVIN for facsimile machines (Reg. No. 2,230,303) (the "'303 Mark") was being prosecuted before the PTO, Savin also owned a prior registration for the trademark SAVIN (Reg. No. 836,540) (the "'540 Mark"), among others.

3. The application for registration of the '540 Mark was filed on July 26, 1966, which matured to registration on October 10, 1967.

4. There is no mention of Section 2(f) in the file history of the '540 Mark.

5. Neither the status copy of the '540 Mark nor the TARR database of the PTO states anywhere that the '540 Mark is based on Section 2(f).

6. I spoke with the Examining Attorney at the PTO regarding the '303 Mark, on or about December 8, 1998.

7. The Examining Attorney and I had access to the file and to database information regarding the '540 Mark.

8. On December 8, 1998, I discussed with the Examining Attorney my belief that the '540 Mark did not indicate a Section 2(f) basis.

9. The Examining Attorney agreed with my interpretation.

10. At the end of this conversation, the Examining Attorney requested that I memorialize the conversation in a letter.

11. I did so in a letter on the same day.

12. The Examiner's struck reference to Section 2(f) from the '303 registration by Amendment.

13. Annexed hereto as "Exhibit 1" is a true and correct copy of the Assignment of trademarks from Savin to Foothill dated January 13, 1988.

14. Annexed hereto as "Exhibit 2" is a true and correct copy of the re-assignment of trademarks from Foothill to Savin dated December 18, 1995.

:717388-1                                  2

15. Annexed hereto as "Exhibit 3" is a true and correct copy of the document reflecting recordation with the U.S. Patent and Trademark Office.

16. Annexed hereto as "Exhibit 4" is a true and correct copy of the relevant pages from the transcript of the deposition of Michael Fishman dated January 20, 2004.

17. Annexed hereto as "Exhibit 5" is a true and correct copy of the status copy of the trademark SAVIN (Reg. No. 836,540).

18. Annexed hereto as "Exhibit 6" is a true and correct copy of the letter dated December 8, 1998 from David A. Einhorn to the Examining Attorney at the U.S. Patent and Trademark Office.

19. Annexed hereto as "Exhibit 7" is a true and correct copy of the Examiner's Amendment dated January 26, 1999.

Dated: February 18, 2004

_____
David A. Einhorn

:717388-1                                3